FRYSINGER, APPELLANT, *v.* LEECH, APPELLEE.

[Cite as Frysinger *v.* Leech (1987), 32 Ohio St. 3d 38.]

(No. 86-593—Decided August 12, 1987.)

*Carl G. McMahon* and *Rodney M. Arthur,* for appellant.

*Gooding, Evans & Huffman, Lawrence S. Huffman* and *Matthew C. Huffman,* for appellee.

MARKUS, J. The physician contends: (1) a malpractice action accrues upon the patient's discovery of the malpractice injury, despite the later termination of the professional relationship, and (2) a Civ. R. 41(A)(1) dismissal precludes a plaintiff's reliance on R.C. 2305.19 to eliminate the limitations bar. We reject both those contentions, reverse the dismissal judgment, and remand the cause for further proceedings.

## I

R.C. 2305.11(A) established the statute of limitations applicable to medical malpractice cases. At the time relevant herein, it provided:

"An action for * * * malpractice, including an action for malpractice

against a physician, podiatrist, or a hospital, * * * shall be brought within one year after the cause thereof accrued * * *.

"If a written notice, prior to the expiration of time contained in this division, is given to any person in a medical claim that a person is presently considering bringing an action against that person relating to professional services provided to that individual, then an action by that individual against that person may be commenced at any time within one hundred eighty days after that notice is given."

Thus, this patient's first suit was timely under R.C. 2305.11(A) if she gave her written notice "within one year after the cause thereof accrued." In earlier decisions, this court repeatedly held that an action for professional malpractice does not accrue and limitations do not run while that professional relationship continues. *E.g., Gillette* v. *Tucker* (1902), 67 Ohio St. 106, 65 N.E. 865; *Bowers* v. *Santee* (1919), 99 Ohio St. 361, 124 N.E. 238; *Amstutz* v. *King* (1921), 103 Ohio St. 674, 135 N.E. 973; *Delong* v. *Campbell* (1952), 157 Ohio St. 22, 47 O.O. 27, 104 N.E. 2d 177; *Lundberg* v. *Bay View Hospital* (1963), 175 Ohio St. 133, 23 O.O. 2d 416, 191 N.E. 2d 821; *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164, 54 O.O. 2d 283, 267 N.E. 2d 419; *Ishler* v. *Miller* (1978), 56 Ohio St. 2d 447, 10 O.O. 3d 539, 384 N.E. 2d 296.

The physician relies on this court's decision in *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 11, 5 OBR 247, 449 N.E. 2d 438, where the court adopted a "discovery rule" for the accrual of medical malpractice actions. The court recently construed the *Oliver* discovery rule in *Hoffman* v. *Davidson* (1987), 31 Ohio St. 3d 60, 31 OBR 165, 508 N.E. 2d 958. The syllabus in *Oliver* provides:

"Under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury. (*Gillette* v. *Tucker; Bowers* v. *Santee; Amstutz* v. *King; Delong* v. *Campbell; Lundberg* v. *Bay View Hospital; Wyler* v. *Tripi,* and all other inconsistent cases, overruled.)" (Citations for cited cases omitted.)

The physician also relies on the following language in the opinions of *Oliver, supra,* and *Clark* v. *Hawkes Hospital* (1984), 9 Ohio St. 3d 182, 9 OBR 467, 459 N.E. 2d 559:

"The narrow issue raised by this appeal is whether a cause of action for medical malpractice pursuant to R.C. 2305.11(A) accrues upon the termination of the medical relationship or upon the time of the discovery of the malpractice." *Oliver, supra,* at 112, 5 OBR at 248, 449 N.E. 2d at 439.

"In view of the foregoing, this court finds that it is within its power to adopt a discovery rule, a rule which will ameliorate the obvious and flagrant injustice frequently resulting from the operation of the termination rule, and hence hold that under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Oliver, supra,* at 118-119, 5 OBR at 253, 449 N.E. 2d at 443.

"No longer may courts apply the termination of the doctor-patient relationship as the accrual point for medical malpractice causes of action." *Clark, supra,* at 183, 9 OBR at 468, 459 N.E. 2d at 561.

However, we must read the sylla-

bus in *Oliver* and the language in *Oliver* and *Clark* in the context of their facts. *Rauhaus* v. *Buckeye Local School Dist. Bd. of Edn.* (1983), 6 Ohio St. 3d 320, 323, 6 OBR 379, 381, 453 N.E. 2d 624, 626; *Williamson Heater Co.* v. *Radich* (1934), 128 Ohio St. 124, 190 N.E. 403, paragraph one of the syllabus. In both *Oliver* and *Clark,* the patient discovered the malpractice injury long after the physician-patient relationship terminated. In neither case did the court have reason to discuss the situation where the professional relationship continues after the patient discovers the malpractice injury.

Indeed, the syllabus in *Oliver* significantly omits *Ishler* v. *Miller, supra,* from the list of cases which *Oliver* overrules. In *Ishler,* the defendant argued for a discovery rule to reduce the plaintiff's time to file a malpractice case. Unlike the cases which *Oliver* overruled, the evidence showed that Ishler discovered the malpractice before the relationship ended. The *per curiam* opinion said at 448, 10 O.O. 3d at 540, 384 N.E. 2d at 298:

"This court rejects the view that the discovery rule should apply in the period prior to the termination of the physician-patient relationship."

The court did not actually adopt a discovery rule to extend the time for filing a malpractice action, until its decision in *Oliver* five years later. Consequently, it resolved *Ishler* by holding that limitations did not run while the professional relationship continued, despite the patient's earlier discovery of the malpractice injury. At the same time, the *Ishler* opinion restated the substantial public policy which underlies the termination rule at 449, 10 O.O. 3d at 540, 384 N.E. 2d at 298:

"The reasons for the termination rule were succinctly set forth by this court in *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164, at pages 167-168, wherein we stated:

" 'The justification for the termination rule is that it strengthens the physician-patient relationship. The patient may rely upon the doctor's ability until the relationship is terminated and the physician has the opportunity to give full treatment, including the immediate correction of any errors in judgment on his part. In short, it was thought that the termination rule is conducive to that mutual confidence which is essential to the physician-patient relationship.'

"Thus, to require a patient to file suit for malpractice during the course of treatment for a particular injury or disease when he believes or reasonably should believe that he has a malpractice claim would destroy this mutual confidence in the physician-patient relationship. Such a requirement would place the patient in the unacceptable situation of deciding whether to continue the ongoing treatment and thus risk the chance of forfeiting his right to bring suit at a later date, or terminate the relationship, and, perhaps, deny the physician the opportunity of correcting his error."

Thus, the termination rule encourages the parties to resolve their dispute without litigation, and stimulates the physician to mitigate the patient's damages. Those worthwhile goals still justify the termination rule, so long as it does not curtail the patient's right to sue after discovering the malpractice injury.

Therefore, we hold that under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, *or* (b) when the physician-patient relationship for that

condition terminates, *whichever occurs later*.

## II

As a result, the patient's first suit on this claim was timely. Manifestly, the second suit on the same claim more than three years later was untimely, unless R.C. 2305.19 applies.

Where R.C. 2305.19 applies, the date for filing the new action relates back to the filing date for the preceding action for limitations purposes. *Lewis* v. *Connor* (1985), 21 Ohio St. 3d 1, 4, 21 OBR 266, 268, 487 N.E. 2d 285, 287; *Reese* v. *Ohio State Univ. Hosp.* (1983), 6 Ohio St. 3d 162, 163-164, 6 OBR 221, 222-223, 451 N.E. 2d 1196, 1198.

Thus, if R.C. 2305.19 applies to this patient's dismissal of her first case without prejudice, under Civ. R. 41(A)(1), her second case was also timely. The savings statute, R.C. 2305.19, provides in pertinent part:

"In an action commenced, or attempted to be commenced, if in due time * * * the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff * * * may commence a new action within one year after such date. * * *"

In *Chadwick* v. *Barba Lou, Inc.* (1982), 69 Ohio St. 2d 222, 226, 23 O.O. 3d 232, 234, 431 N.E. 2d 660, 663, this court held that any dismissal without prejudice constitutes a termination " 'otherwise than upon the merits,' " for savings statute purposes. Earlier cases had denied that an action "fails" for purposes of R.C. 2305.19 when the plaintiff voluntarily dismisses it. *E.g., Siegfried* v. *Railroad Co.* (1893), 50 Ohio St. 294, 34 N.E. 331; *Beckner* v. *Stover* (1969), 18 Ohio St. 2d 36, 47 O.O. 2d 156, 247 N.E. 2d 300. *Chadwick's* syllabus decided that an action "fails" when the trial court dismisses

it on the plaintiff's motion pursuant to Civ. R. 41(A)(2).

However, *Chadwick* did not reach the question whether an action "fails" when the plaintiff dismisses it by a written notice under Civ. R. 41(A)(1). *Id.* at 229, 23 O.O. 3d at 236, 431 N.E. 2d at 665, fn. 8. We now follow the *Chadwick* rationale for voluntary dismissals under Civ. R. 41(A)(2), and apply R.C. 2305.19 to voluntary dismissals under Civ. R. 41(A)(1).

The earlier contrary cases predated the Civil Rules. Under then applicable statutory procedures, a plaintiff could repeatedly dismiss the case without prejudice and refile, prior to its final submission for a verdict. Former R.C. 2323.05. Under those procedures, only the statutes of limitations prevented unlimited voluntary dismissals and refilings. If R.C. 2305.19 eliminated the limitations bar, those cases reasoned that plaintiffs could "try and retry their causes indefinitely until the most favorable circumstances for submission were finally achieved." *Beckner* v. *Stover, supra,* at 40, 47 O.O. 2d at 158, 247 N.E. 2d at 303.

*Chadwick* pointed out that the Civil Rules now prevent such unrestrained refilings, without regard to limitations statutes. Civ. R. 41(A) establishes three mechanisms by which a plaintiff can voluntarily dismiss his or her own case. Each of them limits the plaintiff's ability to refile. First, the plaintiff can dismiss the case without approval of the court or any adverse party, by filing a written notice before the trial begins. Civ. R. 41(A)(1)(a). However, a second dismissal by a written notice under Civ. R. 41(A)(1)(a) "operates as an adjudication upon the merits," and bars the plaintiff from pursuing that claim again.

Second, the plaintiff can dismiss the case without the court's approval

"by filing a stipulation of dismissal signed by all parties who have appeared in the action." Civ. R. 41(A)(1)(b). The adverse parties can prevent repeated dismissals and refilings under this rule, by simply declining to stipulate.

Finally, the plaintiff may ask the court to dismiss the case by an order "upon such terms and conditions as the court deems proper." Civ. R. 41(A)(2). *Chadwick* reasoned at 229, 23 O.O. 3d at 236, 431 N.E. 2d at 665, that R.C. 2305.19 applies after a Civ. R. 41(A)(2) dismissal, because the court can control any possible abuse by the plaintiff.

Additionally, whenever a plaintiff refiles a case after voluntarily dismissing it, the court can order the plaintiff to pay any costs for the previous case. Civ. R. 41(D). The court can then stay the new case until the plaintiff pays those costs. *Id.*

The Civil Rules seek to impose reasonable restrictions on all three forms of voluntary dismissals to preclude unwarranted refilings. This court need not supplement those restrictions by denying the apparent legislative protection from the limitations bar under R.C. 2305.19 for the seasonably refiled action. An action "fails" when the plaintiff voluntarily dismisses it.

Therefore, a voluntary dismissal pursuant to Civ. R. 41(A)(1) constitutes failure "otherwise than upon the merits" within the meaning of the savings statute, R.C. 2305.19. This patient's action was timely filed and timely refiled.

The judgment of the court of appeals is hereby reversed and the cause is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

HOLMES, WRIGHT and H. BROWN, JJ., concur.

SWEENEY, Acting C.J., and DOUGLAS, J., concur in paragraph two of the syllabus and the judgment, with opinion.

LOCHER, J., concurs in paragraph two of the syllabus and the judgment, with opinion.

SWEENEY, J., sitting for MOYER, C.J.

MARKUS, J., of the Eighth Appellate District, sitting for SWEENEY, J.

LOCHER, J., concurring in judgment. I concur in the judgment and paragraph two of the syllabus only. I agree wholeheartedly with the analysis contained in the second paragraph of Justice Douglas' concurrence. Therefore, I cannot concur in paragraph one of the syllabus.

I realize that this view appears to contradict the views expressed by my votes in *Richards* v. *St. Thomas Hospital* (1986), 24 Ohio St. 3d 27, 24 OBR 71, 492 N.E. 2d 821, and *Hoffman* v. *Davidson* (1987), 31 Ohio St. 3d 60, 31 OBR 165, 508 N.E. 2d 958. However, this apparent contradiction is a result of my personal interpretation of the term "injury."

Webster's Third New International Dictionary of the English Language (1981), defines "injury" as "an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm." It is this definition which best reflects my interpretation of the term "injury" for the purposes of malpractice actions. In my view, "malpractice" is an "unjust or undeserved infliction of suffering or harm" by a medical practitioner upon a patient. A patient may discover that he

or she is experiencing pain or serious discomfort but be unaware that it is a result of an unjust or undeserved infliction of harm. Thus, it has been my understanding that when one discovers that he or she has been experiencing pain or discomfort *as a result of a negligent act by a physician,* he or she has then discovered that he or she has been "injured." While the terms "malpractice" and "injury" are used separately in both *Richards* and *Hoffman,* I am not confident that the two terms are as clearly separable as those cases and the cause *sub judice* suggest.

DOUGLAS, J., concurring in judgment. I concur only in the judgment and in paragraph two of the syllabus. For the reasons expressed in my dissent in the recent case of *Hoffman* v. *Davidson* (1987), 31 Ohio St. 3d 60, 31 OBR 165, 508 N.E. 2d 958, I cannot concur in paragraph one of the syllabus.

In my view, the accrual date of a cause of action in medical malpractice for purposes of the pertinent statute of limitations should be either the date the physician-patient relationship for that condition terminates, or the date on which the patient discovers or reasonably should have discovered the *malpractice.* I do not consider the date of discovery of the *resulting injury* an acceptable accrual date as espoused by the majority. In many cases, the patient will be aware of the injury without having any reason to suspect malpractice. Thus, an accrual date tied only to discovery of the injury will often cut off the rights of malpractice victims prematurely and unfairly.

SWEENEY, J., concurs in the foregoing opinion.