GRANDILLO et al., Appellants,

v.

MONTESCLAROS et al., Appellees.

[Cite as *Grandillo v. Montesclaros* (2000), 137 Ohio App.3d 691.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–99–49.

Decided May 25, 2000.

*Kinsley F. Nyce,* for appellants.

*James R. Knepp II,* for appellee Mercy Hospital.

*Neema M. Bell,* for appellee Adolben Montesclaros, M.D.

WALTERS, Judge.

Plaintiffs-appellants, Nancy Grandillo, and her husband, Michael Grandillo, bring this appeal from a judgment of the Court of Common Pleas of Seneca County, granting motions for summary judgment in favor of appellees, Dr. Adolben Montesclaros, M.D., and Mercy Hospital, on a complaint alleging, among other things, medical malpractice and lack of informed consent. For the reasons set forth below, we affirm the judgment of the trial court.

The following provides a brief synopsis of the necessary background facts:

On May 15, 1997, Nancy Grandillo met with Dr. Montesclaros, a board-certified general surgeon, for an evaluation of an umbilical hernia, a condition that Mrs. Grandillo apparently developed as the result of a recent pregnancy. Dr. Montesclaros has done numerous surgeries to repair the effects of the condition and, after examining Mrs. Grandillo, agreed to perform the operation, placing the patient on the nonemergency surgical schedule.

Mrs. Grandillo's surgery took place at Mercy Hospital in Tiffin, Ohio, on June 9, 1997, on an outpatient basis. On June 16, 1997, Mrs. Grandillo attended her first post-operative appointment with Dr. Montesclaros. At that point, the incision was still bandaged; thus, the patient had not yet seen the results of the surgery. However, the day after this appointment, Mrs. Grandillo removed the bandages as instructed and discovered that her navel had been removed. A large scar with pockets of skin on either side, or what has been described as a "dog-ear appearance," was left in its stead. Mrs. Grandillo immediately contacted Dr.

Montesclaros to complain about the appearance of the scar and to voice her anger at the fact that she was not informed that her navel had actually been removed or that that was a possible outcome of the surgery.

Despite her concerns, Mrs. Grandillo continued to see Dr. Montesclaros for post-operative care and treatment. The record demonstrates that she attended appointments on June 30, 1997; July 28, 1997; and October 14 of that same year. Dr. Monteclaros's notes indicate that he was prepared to perform another operation to correct the scarring but that it could not occur so soon after the initial procedure. The doctor's notes for the October 14 appointment merely state that Mrs. Grandillo was to "return in the spring of 1998 for recheck." Notwithstanding this directive, the evidence is clear that Mrs. Grandillo did not return to Dr. Montesclaros for care or treatment after that final October appointment.

Instead, Mrs. Grandillo and her spouse caused what is commonly known as a one-hundred-eighty-day letter, drafted pursuant to R.C. 2305.11, to be sent to Dr. Montesclaros and Mercy Hospital as notice of their intention to file suit against both parties. All parties have since stipulated that the letter was served on June 5, 1998.

Thereafter, on December 7, 1998, Mr. and Mrs. Grandillo filed a *pro se* complaint against Dr. Montesclaros for lack of informed consent, battery and medical malpractice. The Grandillos also named Mercy Hospital as a defendant, alleging claims of failure to verify consent and negligent credentialing of a doctor. Mrs. Grandillo sought monetary damages for pain and suffering, the cost of corrective surgery, and punitive damages. Michael Grandillo asserted an additional claim for loss of consortium.

Both defendants filed answers to the complaint, wherein they alleged several affirmative defenses, including the statute of limitations. After a period of general discovery, Dr. Montesclaros filed a motion for summary judgment based upon the ground that the statute of limitations had run, since the plaintiffs failed to file their complaint within one hundred eighty days from the date of service of the letter. Mercy Hospital also filed a similar motion, claiming that the Grandillos had not filed their complaint within the allotted limitations period.

In addition to the argument regarding the statute of limitations, Mercy Hospital further argued that summary judgment was appropriate because Ohio does not recognize a claim for a hospital's failure to verify consent from a non-employee physician, and that the plaintiffs failed to bring forth any evidence to support the claim of negligent credentialing. The Grandillos opposed the motions. However, the trial court agreed with the position advanced by both defendants, and on October 6, 1999, issued an entry granting summary judgment

on the basis of the statute of limitations. Mr. and Mrs. Grandillo then filed the instant appeal.

Appellants assert five assignments of error for our review; however, because we find them to be confusing and inartfully drafted, at best, we have chosen to paraphrase the issues. The following is a list of the assignments of error according to our interpretation of the Grandillos' appellate brief:

I

"The trial court erred in finding that the complaint was time barred because it was not filed within 180 days of the letter of intention to sue."

II

"The trial court erred in calculating the 180 days because the record is unclear as to when Dr. Montesclaros actually received the letter of intention to sue."

III

"In reasserting the issues contained in the second assignment of error, the appellants claim that the trial court erred in its determination of when Dr. Montesclaros became aware of the Grandillos' intention to file a malpractice action."

IV

"The trial court erred in finding that the complaint was barred by the statute of limitations because there is an issue of fact as to when Nancy Grandillo's relationship with Dr. Montesclaros ended."

V

"The trial court erred in applying the periods and limitations contained in R.C. 2305.11 because the Supreme Court of Ohio has recently declared that statute constitutionally void."

For the sake of clarity, we have elected to address these assignments of error outside of their original order and have rearranged them according to the specific issues contained therein. With that stated, our disposition of this matter may properly begin.

As a threshold matter, we must mention the standard that this court employs when reviewing a trial court's decision to grant summary judgment. It is axiomatic that summary judgment is only appropriate in the event that "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party

is entitled to judgment as a matter of law;  and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; Civ.R. 56(C).

An appellate court examines summary judgment on the same basis as that of a trial court and without deference to its findings or conclusions. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200.

## I. Appellants' claims against Dr. Montesclaros

### A. Statute of Limitations

■ Appellants' complaint asserts several causes of action against Dr. Montesclaros:  medical malpractice, lack of informed consent, battery, and loss of consortium.  In its entry granting summary judgment in favor of the doctor, the trial court found that these causes of action were "medical claims" for purposes of the statute of limitations.

R.C. 2305.11(D)(3) defines a "medical claim" as "any claim that is asserted in any civil action against a physician, podiatrist, or hospital, against any employee or agent of a physician, podiatrist, or hospital, or against a registered nurse or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person.  'Medical claim' includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person."

R.C. 2305.11(D)(7) further defines "derivative claims for relief" to include, but are not limited to, "claims of parent, guardian, custodian, or spouse of an individual who was the subject of any medical diagnosis, care, or treatment * * * that arise from that diagnosis, care, treatment * * * and that seek recovery of damages for any of the following:  (a) Loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, or any other intangible loss that was sustained by the parent, guardian, custodian, or spouse."

Pursuant to the above-quoted sections, appellants' claims against Dr. Montesclaros clearly arose out of the medical care and treatment of Nancy Grandillo. Thus, like the trial court, we find that these claims are subject to the period of limitations contained in R.C. 2305.11(B)(1).

■ We must note, however, that the version of R.C. 2305.11 that was in effect at the time that the Grandillos filed their complaint was enacted by the General Assembly as part of Am.Sub.H.B. No. 350, effective January 27, 1997.  Recently, in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d

451, 715 N.E.2d 1062, the Supreme Court of Ohio declared Am.Sub.H.B. No. 350 unconstitutional in its entirety. Once a statute has been found unconstitutional, it no longer applies to cases pending thereunder. *Keith v. Spectrum Sportswear, Inc.* (1997) 120 Ohio App.3d 30, 32, 696 N.E.2d 637, 638–639. Thus, due to the sweeping effect of the court's holding in *Sheward*, this case falls subject to the earlier 1995 version of R.C. 2305.11. *Id.* at 33, 696 N.E.2d at 639.

According to subsection (B)(1) of this statute, the period of limitations within which a plaintiff may file suit upon a medical claim is one year after the accrual of the cause of action. Notwithstanding, R.C. 2305.11(B)(1) provides a limited exception to the general rule:

"[I]f prior to the expiration of that one-year period, a claimant who allegedly possesses a medical * * * claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given."

It logically follows then that the next question to be addressed is at what point did the medical claims in this case accrue in order to trigger the one-year statute of limitations. In *Frysinger v. Leech* (1987), 32 Ohio St.3d 38, 512 N.E.2d 337, the Ohio Supreme Court concluded, at paragraph one of the syllabus, that the statute of limitations for such claims begins to run "(a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later."

### The Discovery Rule

■ With respect to the discovery rule, the parties herein do not dispute that on June 17, 1997, Mrs. Grandillo first noticed that her navel had been removed. On June 5, 1998, prior to the end of the one-year statute of limitations, appellants sent to both defendants a notification of their intention to sue. According to the language contained in R.C. 2305.11(B)(1), the Grandillos could have commenced the action at any time within one hundred eighty days from such notice. However, the record is clear that the complaint was not filed until December 7, 1998, one hundred eighty-five days from the date of the notification letter.

Despite this fact, appellants argue that the trial court erred in its decision to grant summary judgment on the medical claims because, since the letter was sent prior to the end of the original one-year period, the court improperly shortened the applicable statute of limitations. Although appellants cite several cases in apparent support of this argument, we find their reliance on this authority perplexing, since the opinions appear to be in direct contrast to the Grandillos' position.

For instance, appellants refer to *Glenboski v. St. Alexis Hosp.* (1979), 65 Ohio App.2d 165, 19 O.O.3d 122, 417 N.E.2d 108, for the proposition that a court may not reduce the one-year limitations period, regardless of the date of a notification letter. Although the *Glenboski* court examined the question of whether the date of notification should control, the opinion does not espouse such an all-encompassing rule as the Grandillos would have us believe.

Similar to the present matter, the facts in *Glenboski* indicate that the prospective plaintiff in a medical malpractice action sent a notification letter approximately one month prior to the end of the one-year statute of limitations. The complaint, however, was not filed within one hundred eighty days from the date of the notification: thus, the trial court found that it was barred by the statute of limitations. On appeal, the appellant argued that since the complaint was filed within one year and one hundred eighty days from the accrual of the action, the trial court erred in its conclusion. The appellant specifically maintained that the written notice should serve to toll the running of the one-year statute of limitations.

Notwithstanding Glenboski's contentions, the Eighth District Court of Appeals rejected this argument. In deciding the issue, the court held that, from the language contained in the statute, the General Assembly did not intend for the one-year period to be extended in every medical malpractice action in which the plaintiff sends a notification letter. Instead, the court decided that three different results might occur under R.C. 2305.11:

"1. If no written notice is given, then the one year statute of limitations will control.

"2. If written notice is given *180 days or more prior to the end of the one year period* from the date of the accrual of the action, then the one year statute of limitations will still control the filing of the complaint.

"3. *If written notice is given less than 180 days prior to the end of the one year period from the date of accrual of the cause of action, then the extension period of 180 days from the date of the notice will control the filing of the complaint.*" (Emphasis added.) *Id.,* 65 Ohio App.2d at 168, 19 O.O.3d at 124, 417 N.E.2d at 111.

Since the Grandillos sent their written notice less than one hundred eighty days prior to the end of the one-year period from the date of discovery, we find that the December 7, 1998 complaint was not filed within the permissible time period.

Furthermore, we find that our holding herein is not affected by the recent opinion of *Marshall v. Ortega* (2000), 87 Ohio St.3d 522, 721 N.E.2d 1033, wherein the Supreme Court of Ohio was called upon to determine whether, in a situation

where a claimant sends multiple notification letters, the action must be commenced within one hundred eighty days of the earliest letter. In answering this question in the negative, the court stated that the language of R.C. 2305.11(B)(1) does not limit the number of notification letters that a potential plaintiff may send prior to the expiration of the one-year period. *Id.* at 525, 721 N.E.2d at 1036. In fact, the court stated that "[i]f * * * a claimant sends a letter earlier [than the last day of the one-year statute of limitations] but then needs additional time to investigate the claim, the claimant may choose to send an additional one-hundred-eighty-day letter." *Id.* Thus, in order to receive the maximum benefit from this statutory exception, *the court places the burden on the claimant to notify a potential defendant on the last day of the one-year period.* The Grandillos clearly did not carry out this burden; thus, the complaint was not timely filed.

■ In reaching these conclusions, we also reject the Grandillos' argument that the trial court erred in finding the complaint untimely because, although the parties stipulated that the one-hundred-eighty-day letter was served to the doctor's office on June 5, 1998, the evidence is unclear as to when Dr. Montesclaros actually received the notice. In *Marshall v. Ortega* (2000), 87 Ohio St.3d 522, 526, 721 N.E.2d 1033, 1036–1037, the Ohio Supreme Court pointed out that R.C. 2305.11(B)(1) does not designate a manner of service for the notification letters. The court went on to state that "the preferable methods are those in which there is verification of receipt, such as registered or certified mail * * *." *Id.* This statement was prompted by the court's concern that medical malpractice claimants have the ability to demonstrate that the potential defendants received the letters within the time period allotted by the statute. *Id.*

In this case, the evidence demonstrates that the letter was personally served at Dr. Montesclaros's office and upon his receptionist on June 5, 1998. We find that this fact provides adequate verification of receipt. Indeed, in applying the Ohio Rules of Civil Procedure by analogy, if the Grandillos had served the doctor with process by certified mail, the document would have been deemed properly served upon evidence of a return receipt "signed by any person." Civ.R. 4.1(A).

Based upon the foregoing analysis, we find that, insofar as it pertains to the discovery rule, the trial court did not err in granting summary judgment on the claims against Dr. Montesclaros on the ground that the complaint was filed outside the allotted time periods contained in the applicable version of R.C. 2305.11.

## Physician–Patient Termination Rule

■ With respect to the termination rule set forth in *Frysinger, supra,* appellants assert an alternative argument and claim that, regardless of the date that Mrs. Grandillo discovered the results of the surgery and the date of the

notification letter, the complaint was filed well within the permissible time limits because Mrs. Grandillo maintained a patient-physician relationship with Dr. Montesclaros until sometime in the spring of 1998.

In *Wells v. Johenning* (1989), 63 Ohio App.3d 364, 367, 578 N.E.2d 878, 880–881, the Cuyahoga County Court of Appeals stated that the physician-patient relationship may terminate via several methods, including when a patient fails to keep the next scheduled appointment. Appellants specifically argue that the relationship between Nancy Grandillo and Dr. Montesclaros did not end until spring of 1998 because it was at that point that Mrs. Grandillo decided not to attend her next scheduled appointment. We disagree and find that the evidence wholly fails to support this assertion.

The record is clear that the last time Mrs. Grandillo saw Dr. Montesclaros for treatment of the umbilical hernia was on October 14, 1997. Dr. Montesclaros testified that although he instructed the patient to return in 1998 for a "recheck," Mrs. Grandillo did not follow this directive. While there was communication between the parties after that final appointment, it involved the issue of compensation rather than treatment.

Despite these facts, Nancy Grandillo's affidavit states that she did have a scheduled appointment with Dr. Montesclaros in the spring of 1998 that she chose not to attend, but that she cannot remember the date of the appointment. We do not find that this statement, standing alone and contained in a self-serving affidavit, is enough to raise a genuine issue of fact as to when the relationship with this physician terminated. Thus, even if we were to utilize the termination rule, we would still conclude that the complaint was not timely filed.

Therefore, based upon the foregoing, we are convinced that the trial court did not err in granting summary judgment in favor of Dr. Montesclaros.

## II. Appellants' claims against Mercy Hospital

### A. Failure to Verify Informed Consent

In addition to the causes of action alleged against Dr. Montesclaros, appellants also included in their complaint claims for failure to verify informed consent and negligent credentialing against Mercy Hospital. With respect to the claim for failure to verify informed consent, we find that the statute of limitations precludes appellants from bringing this cause of action.

Particularly, since this allegation arises out of the medical care, diagnosis, or treatment of Nancy Grandillo, it must be classified as a "medical claim" pursuant to the definition contained in R.C. 2305.11(D)(3). As such, the claim is subject to the one-year statute of limitations and the accompanying exception set forth in R.C. 2305.11(B)(1). Since this claim, like those filed against Dr. Montesclaros,

was not commenced within one hundred eighty days of the notification letter, we find that the trial court did not err in granting summary judgment in favor of the hospital.

■ Additionally, we must note that, even if we were to find the physician-patient termination rule applicable to the claims against Dr. Montesclaros, we would not employ a similar reasoning herein. In *Grubb v. Columbus Community Hosp.* (1997), 117 Ohio App.3d 670, 677, 691 N.E.2d 333, 337–338, the Tenth District Court of Appeals refused to apply the *Frysinger* termination rule to a claim against a hospital. The court explained that the *Frysinger* rule specifically addresses the relationship between a physician and a patient. Where a hospital or a hospital employee does not have an on-going relationship with the patient, this rule has no logical application. We agree with the holding announced in *Grubb* and find that, since her only contact with Mercy Hospital was for a limited surgical purpose, Nancy Grandillo's claims against the hospital could not have accrued past the June 17, 1997 date of discovery of the alleged malpractice.

■ Furthermore, in its motion for summary judgment, Mercy Hospital argued that, regardless of the statute of limitations, summary judgment is appropriate on the claim for failure to verify consent for an entirely separate reason. In support of this contention, the hospital points to R.C. 2317.54, which states:

"No hospital, home health agency, or provider of a hospice care program shall be held liable for a physician's failure to obtain an informed consent from his patient prior to a surgical or medical procedure or course of procedures, unless the physician is an employee of the hospital, home health agency, or provider of a hospice care program."

The unrefuted evidence in this case demonstrates that, at the time of Mrs. Grandillo's surgery, Dr. Montesclaros provided his services to Mercy Hospital as an independent contractor. He was not an employee of the facility. Thus, we find that R.C. 2317.54 provides additional support for the trial court's decision to grant summary judgment on this particular claim.

### B. Negligent Credentialing

■ In *Browning v. Burt* (1993), 66 Ohio St.3d 544, 613 N.E.2d 993, the Supreme Court of Ohio interpreted the definition of "medical claim" contained in R.C. 2305.11 so as to exclude an action for negligent credentialing. The court reasoned that "[n]egligent credentialing claims arise out of the hospital's failure to satisfy its independent duty to grant and continue staff privileges only to competent physicians. This independent duty does not directly involve diagnosis or the medical care and treatment of a patient." *Id.* at 557, 613 N.E.2d at 1004.

Thus, the court held that such a claim is not subject to the one-year statute of limitations contained in R.C. 2305.11. Rather, since negligent credentialing is, in essence, a claim for bodily injury arising out of negligence, it falls subject to the two-year statute of limitations found in R.C. 2305.10. *Id.* at 558, 613 N.E.2d at 1004.

In an attempt to supersede the effect of *Browning,* the General Assembly added negligent credentialing to the definition of "medical claim" in the Am.Sub. H.B. No. 350 version of R.C. 2305.11. See the provisions of Section 5(F) of H.B. No. 350, printed after the substantive portion of R.C. 2305.11. However, as we previously stated, *State ex rel. Ohio Academy of Trial Lawyers v. Sheward, supra,* struck H.B. No. 350 as unconstitutional. Therefore, in deciding this issue, we must refer to the earlier version of R.C. 2305.11 and its accompanying precedent. In doing so, we find that since an allegation for negligent credentialing is not a "medical claim," and is subject to a two-year statute of limitations, the trial court erred in granting summary judgment on the ground that the claim was time-barred.

However, even though we find that the trial court erred in its determination of the statute of limitations on a claim for negligent credentialing, we agree with an additional argument advanced by Mercy Hospital that, regardless of the timeliness of the complaint, this claim must fail. The Supreme Court of Ohio has stated that in order to recover on a claim for negligent credentialing, a plaintiff must demonstrate that, " 'but for the lack of care in the selection or retention of the physician, the physician would not have been granted staff privileges, and the plaintiff would not have been injured.' " *Browning,* 66 Ohio St.3d at 555, 613 N.E.2d at 1002, quoting *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph two of the syllabus, overruled on other grounds (1994),68 Ohio St.3d 435, 628 N.E.2d 46. The record in this case contains no evidence in support of this allegation. Thus, even though the Grandillos were not precluded from bringing an action for negligent credentialing based upon the statute of limitations, we are convinced that summary judgment was appropriate, since no issue of material fact exists herein.

Based upon the foregoing, we conclude that appellants' assignments of error are without merit and must be overruled.

Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

HADLEY, P.J., concurs.

SHAW, J., dissents.

Shaw, Judge, dissenting.

Because I believe there are genuine and significant issues of fact regarding when the physician/patient relationship may have been terminated during the spring of 1998, I respectfully dissent. Specifically, I respectfully disagree with the factual findings made by the majority on this question.

The majority determines that the physician/patient relationship was not extended beyond the last appointment of October 14, 1997, because the majority finds that the subsequent communications between the parties regarding the follow-up appointment with the doctor in the spring of 1998 involved only compensation rather than treatment. However, in my view, the record is far from clear on this point and, hence, subject to more than one reasonable interpretation. For example, while full payment of the doctor's fee is clearly an issue to the plaintiff, a letter from Michael Grandillo, spouse of the plaintiff, obviously written on plaintiff's behalf and dated as late as *April 9, 1998*, is unclear about whether or not the plaintiff still intended to have the doctor attempt to surgically correct the problem if the fee problem could be worked out. Hence, after reiterating their dissatisfaction with the initial surgery, the letter states:

"As I have written you previously, I do not intend to pay the remainder of the bill with your office *until this issue is resolved.* * * *

"But, I know we are all reasonable, professional people and *I am sure we can come to some agreement to solve this unfortunate problem. I will call you next week to set up an appointment to discuss this with you on a personal basis.*" (Emphasis added.)

The continued dialogue exemplified in the April 9, 1998 letter is quite consistent with the deposition testimony of the doctor based on his office notes wherein he states his recollection that during a July 28, 1997 appointment the repair was discussed with plaintiff and that plaintiff tentatively agreed that the doctor would repair the appearance of the scar "much later"—meaning within a time period of "up to a year later," presumably then, to July 1998. The doctor's office notes for the July 28, 1997 appointment reflect this and further indicate that plaintiff "will return in 3 months for re-evaluation *prior to scheduling,* " which was apparently the purpose of the October 14, 1997 appointment for which the doctor's notes indicate that "the patient then will return in the spring of 1998 for recheck."

Finally, the total lack of certainty as to exactly when the physician/patient relationship may have been terminated is unequivocally demonstrated in the plaintiff's own affidavit, which states in part:

"On October 14, 1997 Defendant Montesclaros *continues* his care and treatment of Plaintiff Grandillo. Montesclaros indicates that Grandillo has healed with no evidence of weakness and will return in the spring of 1998 for recheck.

*"Defendant Montesclaros continued his care and treatment of Plaintiff Grandillo through and until spring 1998 when she was scheduled for appointment to continue treatment and then have Defendant Dr. Montesclaros conduct the second part of the surgery at Defendant Mercy Hospital, Tiffin Ohio.*

"Plaintiff does not now recall the exact date of the spring appointment with Defendant Montesclaros." (Emphasis added.)

The majority simply dismisses the foregoing affidavit and apparently the testimony of the doctor as "self-serving" and hence not worthy of raising a genuine issue of fact. However, I do not believe such a determination is appropriate for an appellate court in a summary judgment case. In my view, applying the appropriate, albeit de novo, standard of review for an appellate court, the foregoing evidentiary documents do raise a genuine issue of material fact as to exactly when in the late spring of 1998, the physician/patient relationship in this case may have been terminated. Under the law applicable at the time, the factual determination of that question may well impact the governing statute of limitations regarding the complaint filed on December 7, 1998. I would reverse and remand for a determination of those two issues.