TAUSCH et al., Appellant,

v.

RIVERVIEW HEALTH INSTITUTE, L.L.C., Appellee.

[Cite as *Tausch v. Riverview Health Inst., L.L.C.,* 187 Ohio App.3d 173, 2010-Ohio-502.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22921.

Decided Feb. 12, 2010.

Sherrill Hondorf, for appellant.

Rick L. Weil, for appellee.

GRADY, Judge.

{¶ 1} This is an appeal from a summary judgment for a hospital in an action on claims for relief alleging medical malpractice.

{¶ 2} On August 18, 2005, Edward Tausch underwent a surgical procedure on his back performed by Dr. Lawrence Rothstein at the Dayton Laser Spine Center, which is owned and operated by Riverview Health Institute, L.L.C. ("Riverview"). Dr. Rothstein was then an employee of Greater Cincinnati Pain Management Centers. He was credentialed by and had surgical privileges at Riverview.

{¶ 3} Tausch awoke after surgery experiencing pain and a form of paralysis in his left leg known as "drop foot." These conditions did not exist prior to the surgery. Dr. Rothstein assured Tausch that his drop-foot condition would resolve over time. Dr. Rothstein continued to offer the same assurances to Tausch until their physician-patient relationship terminated on January 23, 2006. During the summer months of that year, other physicians diagnosed Tausch's foot condition as permanent.

{¶ 4} On November 16, 2006, Tausch sent 180-day letters authorized by R.C. 2305.113(B)(1) to Dr. Rothstein, Greater Cincinnati Pain Management Centers, and Riverview, notifying each that Tausch was considering bringing an action against them on a medical claim. Tausch's letter was received by Riverview on the following day, November 17, 2006.

{¶ 5} On May 14, 2007, 181 days[1] after Riverview received his letter, Tausch commenced an action for medical malpractice against Riverview, Dr. Rothstein, and Greater Cincinnati Pain Management Centers. Tausch's complaint alleged (1) medical negligence on the part of Dr. Rothstein, (2) joint and several liability of all defendants for that negligence, (3) lack of informed consent for the surgery for which all defendants are liable, and (4) the liability of Riverview and Greater Cincinnati Pain Management Centers for negligent credentialing and/or supervision of Dr. Rothstein and vicarious liability for his alleged medical negligence. Tausch's spouse, Susan, alleged a loss of consortium. Both plaintiffs asked for compensatory damages. Edward Tausch also asked for punitive damages.

{¶ 6} Responsive pleadings were filed, and thereafter Riverview filed a Civ.R. 12(B)(6) motion to dismiss. Riverview argued that the malpractice action that Tausch commenced on May 14, 2007, with respect to acts or omissions that occurred in the surgery performed on August 18, 2005, are barred by the one-year statute of limitations governing malpractice actions, R.C. 2305.113(A). Because that contention presented questions of fact, the court converted Riverview's motion to dismiss to a Civ.R. 56 motion for summary judgment. Tausch responded to Riverview's motion, arguing that his action was timely commenced because the statute was tolled by the rules regarding discovery of malpractice and termination of the physician-patient relationship announced in *Frysinger v. Leech* (1987), 32 Ohio St.3d 38, 512 N.E.2d 337.

{¶ 7} On June 13, 2008, the court overruled Riverview's motion for summary judgment on Tausch's claims for relief alleging negligent supervision and credentialing. The court held that those claims are governed by the two-year statute of limitations for bodily injuries, R.C. 2305.10. Because the surgery took place on

---

1. The 180th day, May 13, 2007, was a Sunday, which per Civ.R. 6(A) extended the filing deadline to Monday, May 14, 2007.

August 18, 2005, the action against Riverview on those claims that Tausch commenced on May 14, 2007, was therefore timely.

{¶ 8} The court granted Riverview's motion for summary judgment on Tausch's claims for relief alleging lack of informed consent and vicarious liability. The court found that those claims are governed by the one-year statute for malpractice actions, R.C. 2305.113(A). Because more than one year had passed between the August 18, 2005 surgery and November 17, 2006, the date on which Riverview received Tausch's R.C. 2305.113(B)(1) 180–day letter, the court found that Tausch's action on those claims was not timely filed. Regarding Tausch's argument that the November 17, 2006 letter was timely received by Riverview because the statute had been tolled pursuant to the holdings in *Frysinger v. Leech* until January 23, 2006, less than one year before the letter was received, the court wrote:

{¶ 9} "Plaintiffs argued that the relationship with Riverview did not terminate until January 23, 2006, when the relationship terminated with Dr. Rothstein, and that the statute did not start to run until the Plaintiffs discovered that the condition was permanent.

{¶ 10} "Plaintiffs provide no support, evidentiary or otherwise, for their argument that the relationship with Riverview terminated at the same time as the relationship with Dr. Rothstein. Dr. Rothstein had privileges with Riverview, but that does not mean that the statute of limitations should be extended for the events that occurred at Riverview simply because Mr. Tausch continued to see Dr. Rothstein after the surgery. Further, Mr. Tausch 'discovered' his paralytic injury immediately after surgery and the statute began to run at that time."

{¶ 11} On August 1, 2008, the trial court certified that there was no just reason for delay of an appellate review of the summary judgment for Riverside that the court granted. Civ.R. 54(B). Tausch filed a notice of appeal on September 2, 2008.

ASSIGNMENT OF ERROR

{¶ 12} "The trial court erred in dismissing plaintiff Ed Tausch's causes of actions for lack of informed consent and vicarious liability against defendant Riverview."

{¶ 13} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against

**178**

whom the motion is made. *Morris v. First Natl. Bank & Trust Co.* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. Further, the issues of law involved are reviewed de novo. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 711 N.E.2d 726.

{¶ 14} Tausch's claims for relief against Riverview alleging lack of informed consent and vicarious liability are medical claims governed by the one-year statute of limitations, R.C. 2305.113(A). *Grandillo v. Montesclaros* (2000), 137 Ohio App.3d 691, 739 N.E.2d 863; *Patterson v. Janis*, Franklin App. No. 07AP–347, 2007-Ohio-6860, 2007 WL 4444393. Tausch's action on those claims was commenced on May 14, 2007, 180 days after Riverview received Tausch's R.C. 2305.113(B)(1) notice. The issue is whether the further requirement of that section was satisfied: that the R.C. 2305.113(B)(1) notice was received by Riverview within one year after Tausch's cause of action accrued.

Termination Rule

{¶ 15} In *Clark v. Southview Hosp.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46, syllabus, the Supreme Court held:

{¶ 16} "A hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care. (*Albain v. Flower Hosp.* [1990], 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph four of the syllabus, overruled.)"

{¶ 17} Subsequently, in *Comer v. Risko*, 106 Ohio St.3d 185, 833 N.E.2d 712, 2005-Ohio-4559, ¶ 27–28, the Supreme Court explained:

{¶ 18} "Agency by estoppel is not a direct claim against a hospital, but an indirect claim for the vicarious liability of an independent contractor with whom the hospital contracted for professional services. Furthermore, if the independent contractor is not and cannot be liable because of the expiration of the statute of limitations, no potential liability exists to flow through to the secondary party, i.e., the hospital, under an agency theory.

{¶ 19} "Therefore, we hold that agency by estoppel is a derivative claim of vicarious liability whereby the liability of the hospital must flow through the independent-contractor physician. Consequently, there can be no viable claim for agency by estoppel if the statute of limitations against the independent-contractor physician has expired."

{¶ 20} Tausch's claim against Riverview on a theory of vicarious liability derives from his claim against Dr. Rothstein. If Tausch's action on his claim against Dr. Rothstein was timely filed, and Tausch's action against Riverview was likewise timely, then per *Comer* the action against Riverview is not barred by the one-year statute. Tausch argues that the statute was tolled for both pursuant to the holding in *Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337. The first paragraph of the syllabus in that case states:

{¶ 21} "Under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later. (*Oliver v. Kaiser Community Health Found.* [1983], 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, explained and modified.)"

{¶ 22} *Frysinger* added the termination rule to the prior holding in *Oliver* that a medical-malpractice action accrues for purposes of the one-year statute if and when the injury is later discovered. In explaining its reasons, the *Frysinger* court quoted the following passage in *Ishler v. Miller* (1978), 56 Ohio St.2d 447, 449, 384 N.E.2d 296:

{¶ 23} " 'The reasons for the termination rule were succinctly set forth by this court in *Wyler v. Tripi* (1971), 25 Ohio St.2d 164, at pages 167–168 [54 O.O.2d 283, 267 N.E.2d 419], wherein we stated:

{¶ 24} " ' "The justification for the termination rule is that it strengthens the physician-patient relationship. The patient may rely upon the doctor's ability until the relationship is terminated and the physician has the opportunity to give full treatment, including the immediate correction of any errors in judgment on his part. In short, it was thought that the termination rule is conducive to that mutual confidence which is essential to the physician-patient relationship."

{¶ 25} " 'Thus, to require a patient to file suit for malpractice during the course of treatment for a particular injury or disease when he believes or reasonably should believe that he has a malpractice claim would destroy this mutual confidence in the physician-patient relationship. Such a requirement would place the patient in the unacceptable situation of deciding whether to continue the ongoing treatment and thus risk the chance of forfeiting his right to bring suit at a later date, or terminate the relationship, and, perhaps, deny the physician the opportunity of correcting his error.'

{¶ 26} "Thus, the termination rule encourages the parties to resolve their dispute without litigation, and stimulates the physician to mitigate the patient's

damages. Those worthwhile goals still justify the termination rule, so long as it does not curtail the patient's right to sue after discovering the malpractice injury.

{¶ 27} "Therefore, we hold that under R.C. 2305.11(A),[2] a cause of action for medical malpractice accrues and the statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, *or* (b) when the physician-patient relationship for that condition terminates, *whichever occurs later.*" (Emphasis sic.) *Frysinger,* 32 Ohio St.3d at 41–42, 512 N.E.2d 337.

{¶ 28} The trial court reasoned that Tausch's right of action against Riverview commenced on the date of the surgery, August 18, 2006, and was not tolled beyond that date merely because Dr. Rothstein had staff privileges at Riverview, absent any further treatment Tausch received there. The court cited and relied on the holding of the Third District Court of Appeals in *Grandillo v. Montesclaros,* 137 Ohio App.3d 691, 739 N.E.2d 863, which likewise rejected an informed consent claim against a hospital.

{¶ 29} In *Grandillo,* the plaintiff commenced a medical-malpractice action against a surgeon and the hospital where her surgery was performed on medical-malpractice claims alleging negligent credentialing and failure to verify informed consent. The action was commenced more than one year after the surgery was performed. On appeal from a summary judgment for the hospital on its statute-of-limitations defense, the Third District Court of Appeals first found that the hospital was not liable on the informed-consent claim, per R.C. 2317.54, because the surgeon was its independent contractor. After finding that both claims against the hospital were medical claims governed by R.C. 2305.11(A), the appellate court found that though the statute of limitations was tolled on claims against the surgeon while the physician-patient relationship continued, the same would not apply to the claims against the hospital, because the plaintiff and the hospital did not have an ongoing relationship following the surgery. The court cited and relied on the holding in *Grubb v. Columbus Community Hosp.* (1997), 117 Ohio App.3d 670, 691 N.E.2d 333, for that finding.

{¶ 30} In *Grubb,* a patient who had been admitted to a hospital for diagnostic testing was injured when a hospital orderly directed him to get off a gurney and walk down a flight of steps, against the patient's protests that he was unwell. The patient then fell down the steps, injuring his back and neck. The patient sought treatment for those injuries from Dr. Song, who diagnosed a neck sprain. Subsequently, the patient was advised by other physicians that he had suffered a herniated disc in his neck that required immediate surgery. The patient subsequently filed a medical-malpractice claim against Dr. Song for his alleged

---

2. The prior version of R.C. 2305.113(A).

negligent failure to diagnose the condition and against the hospital for its orderly's negligence. The action was filed more than one year after the date of the plaintiff's fall and injury but within one year after termination of the plaintiff's physician-patient relationship with Dr. Song.

{¶ 31} On appeal from a summary judgment for the hospital on both claims for relief against it, the plaintiff in *Grubb* argued that his action was timely filed because the one-year statute was tolled by the discovery and termination rules applicable to medical-malpractice claims. The Tenth District Court of Appeals rejected the discovery argument, reasoning that the fall itself and the injuries the plaintiff immediately suffered as a result were a cognizable event that reasonably put him on notice of the hospital's negligence on the date the fall occurred.

{¶ 32} Regarding the termination issue, *Grubb* held that the rule of *Frysinger v. Leech* that tolls the one-year statute until the physician-patient relationship terminates "does not apply here, where the alleged tortfeasor is a hospital employee who does not have an ongoing professional relationship with the patient." 117 Ohio App.3d at 677, 691 N.E.2d 333. The court added that the termination rule could not apply, in any event, because the plaintiff's action against the hospital and Dr. Song was filed more than one year after the physician-patient relationship between the plaintiff and Dr. Song had terminated.

{¶ 33} On its facts, we agree with the holding in *Grubb* that the termination rule of *Frysinger* could not possibly apply to the plaintiff's malpractice claims against the hospital where the physician-patient relationship terminated more than one year before the malpractice action was filed.[3] We also agree that the claim against the hospital arising from the negligence of its orderly in causing an injury could not be tolled by the termination rule of *Frysinger* governing claims against physicians, because the injury on which the claim against the hospital was based preceded and was independent of the physician's allegedly negligent diagnosis and treatment of the plaintiff for that injury. However, we do not agree with the implication that the trial court in the present case drew from the holdings in *Grandillo* and *Grubb*, which is that malpractice claims against a hospital that derive from the negligence of a physician are not tolled while the physician-patient relationship continues.

{¶ 34} " 'Medical claim' means any claim that is asserted in a civil action against a physician [or] hospital * * * and that arises out of the medical diagnosis, care or treatment of any person. 'Medical claim' includes * * * [d]erivative claims for relief that arise from the medical diagnosis, care, or

---

3. It appears that in *Grubb* no R.C. 2305.11(B)(1) 180–day letter had been sent.

treatment of a person." R.C. 2305.113(E)(3). That section thus recognizes application of the doctrine of vicarious liability to medical claims.

{¶ 35} The critical issue in the analysis of hospital vicarious liability in *Clark v. Southview Hosp.* and *Comer v. Risko* is not, as the trial court held, whether the plaintiff-patient had a continued relationship with the hospital. The critical issue is whether, when the professional medical service was performed by the independent-contractor physician, the hospital held itself out as a provider of medical services and the plaintiff-patient was induced to rely on the hospital's ostensible agency. When both are shown, the fact that the plaintiff-patient had no further contact with the hospital is immaterial, so long as the plaintiff-patient filed the action against the hospital within the time provided for filing an action against the physician.

▪ {¶ 36} *Comer* supports a conclusion that when the statute of limitations applicable to a physician is tolled pursuant to *Frysinger v. Leech,* a related claim against a hospital on a theory of vicarious liability arising out of the physician's negligence is likewise tolled. Indeed, to do otherwise could require the patient to commence an action against the hospital while the physician-patient relationship continues, undermining the values *Frysinger* identified and relied on in adopting the termination rule.

{¶ 37} On this record, the physician-patient relationship between Tausch and Dr. Rothstein continued to January 23, 2006. On November 16, 2006, Tausch sent a 180–day letter to both Dr. Rothstein and Riverview, which extended the one-year term until May 14, 2007. Tausch filed his action against both on that date, and the action against both was therefore timely filed. No proof of any additional contact between Riverview and Tausch was required to show that his action against Riverview for the alleged negligence of its independent-contractor physician was timely filed.

{¶ 38} The trial court erred in holding that the one-year statute of limitations governing Tausch's medical-malpractice action against Riverview was not tolled and that his cause of action against Riverview did not accrue until January 23, 2006, when Tausch's physician-patient relationship with Dr. Rothstein terminated.

## Discovery

▪▪ {¶ 39} A cause of action for medical malpractice accrues and the one-year statute of limitations, R.C. 2305.113(A), begins to run when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury. *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438; *Frysinger v. Leech.* In making that determination, the court must look to the facts of the case in order to find (1) when the injured party became aware, or should have become aware, of

the extent and seriousness of his condition, (2) whether the injured party was aware, or should have been aware, that the condition was related to a specific medical service previously rendered him, and (3) whether the condition would put a reasonable person on notice of the need for further inquiry as to the cause of the condition. *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204.

{¶ 40} In determining the first prong of the *Hershberger* test regarding the injured party's awareness of the extent and seriousness of his condition, the court must find that a "cognizable event" occurred that put the party on notice that his injury is related to a specific medical procedure and of the need to pursue his possible remedies. *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93. "*[C]onstructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations." (Emphasis sic; citation omitted.) *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284.

{¶ 41} It is undisputed that Tausch became aware of his drop-foot condition and the pain associated with the paralysis that caused the condition shortly after he regained consciousness following the surgery performed on August 18, 2005. The trial court, relying on *Richards v. St. Thomas Hosp.* (1986), 24 Ohio St.3d 27, 24 OBR 71, 492 N.E.2d 821, found, as a matter of law, that those matters constituted a cognizable event that put Tausch on notice at that time that his injury was related to the surgery and of the need to pursue his possible remedies. *Allenius v. Thomas.* As a consequence, the court held, Tausch's cause of action against Riverview commenced to run on August 18, 2006, more than one year before Riverview received Tausch's 180-day letter.

{¶ 42} In *Richards*, the plaintiff underwent surgery for a herniated disc in 1975. He never regained movement in his legs following surgery and thereafter was confined to a wheelchair. The plaintiff never consulted a physician concerning the treatment he received. Neither did he seek legal advice. In 1982, after viewing an episode of "M.A.S.H." in which a similar injury was treated, the plaintiff became concerned about his treatment. Subsequently, in 1983, he commenced an action against the hospital where his surgery had been performed eight years earlier on claims alleging medical malpractice. The trial court granted summary judgment for the hospital on its statute-of-limitations defense. The court of appeals affirmed.

{¶ 43} On review, the Supreme Court noted in *Richards* that the plaintiff became aware of his injury immediately following surgery and that "[h]is failure

to seek independent medical advice to determine whether his injury could have been avoided or lessened was not the result of an inability * * * on his part." 24 Ohio St.3d at 28, 24 OBR 71, 492 N.E.2d 821. The court found that, therefore, the plaintiff had "alleged nothing which reasonably suggests that he should not have discovered the alleged malpractice within the one year prescribed." Id. at 28–29, 24 OBR 71, 492 N.E.2d 821. Concerning the fraudulent-concealment claim, the Supreme Court found that it also was untimely, stating: "Where, as here, the 'fraud' complained of is integral to the malpractice alleged, the concealment of that cause of action does not independently extend the statute of limitations." Id. at 29, 24 OBR 71, 492 N.E.2d 821.

{¶ 44} In the present case, the trial court relied on *Richards* and its facts to find that the onset of Tausch's drop-foot condition was likewise a cognizable event that put him on notice of the injury he suffered and the need to pursue his possible remedies. *Allenius*. However, we see a material difference between the two situations.

{¶ 45} In *Richards*, the alleged fraudulent concealment arose from a tortfeasor's failure to disclose the act or omission constituting the alleged malpractice. That failure was merely integral to the breach of duty that the malpractice involved, because the law imposes no independent duty on a tortfeasor to disclose his wrongs. On the other hand, fraud arising from the alleged misrepresentation by a tortfeasor of the nature or extent of the condition resulting from alleged malpractice is not integral to the breach of the duty of care that the malpractice involved. Rather, the misrepresentation is a separate wrong independent of that breach of duty. Therefore, the misrepresentation may independently extend the statute of limitations governing the malpractice claim when it reasonably causes the plaintiff not to seek other medical advice.

{¶ 46} Unlike the plaintiff in *Richards*, Tausch sought continued treatment by Dr. Rothstein following his surgery. Dr. Rothstein's conduct in continuing to tell Tausch that his condition would resolve had the capacity to persuade Tausch against the need for any other, further inquiry concerning the cause and seriousness of his condition. Whether Tausch acted reasonably on the standard in *Hershberger* in not having discovered that his injury would not resolve until he later did, more than one year after the surgery, presents a genuine issue of material fact, one that a jury must first determine before the court can find that the drop-foot condition was a cognizable event as a matter of law. Therefore, the trial court erred when it granted summary judgment for Riverview.

{¶ 47} The holding in *Richards* concerning the fraud claim was a part of the lead per curiam opinion in which two justices concurred. Two others concurred in the judgment in the case, but in a separate written opinion. Three other justices concurred in part and dissented in part and did not reach the statute-of-

limitations issue at all. There was no syllabus by the court. Because the lead opinion disposing of the fraud claim as it did was the view of but two justices, that part of the holding in *Richards* lacks precedential value.

## Conclusion

{¶ 48} The trial court erred when it granted summary judgment for Riverview. That judgment is reversed, and the matter is remanded to the trial court for further proceedings, consistent with our opinion.

Judgment reversed
and cause remanded.

FAIN, J., concurs.

DONOVAN, P.J., dissents.

DONOVAN, Presiding Judge, dissenting.

{¶ 49} I disagree. The trial court correctly decided that Tausch's claims alleging lack of informed consent and vicarious liability are governed by the one-year statute for malpractice actions, R.C. 2305.113(A). More than one year had lapsed since Tausch's surgery had been performed (August 18, 2005) when Riverview received Tausch's 180–day letter on November 17, 2006. Thus, it was untimely.

{¶ 50} The trial court properly concluded that the Tauschs presented no support, evidentiary or otherwise, for their contention that the relationship with Riverview terminated at the same time as the relationship with Dr. Rothstein. The fact that Dr. Rothstein had privileges at Riverview, and ostensibly agreed to abide by their policies and procedures while using their facility, does not affect Dr. Rothstein's status as a nonemployee of Riverview. Riverview was only the situs of the surgery, and Tausch's care, treatment, and diagnosis were all rendered by Dr. Rothstein. Nothing in the record suggests that Riverview had any right to control or direct Dr. Rothstein's clinical judgment or treatment. Nor is there anything in the record to suggest that Riverview held itself out as being under the direction or control of Dr. Tausch.

{¶ 51} In Tausch's response to the converted motion, he argued that Riverview and Dr. Rothstein had "more than a fleeting relationship" and the "surgery was performed" at Riverview. However, providing the situs for the surgery and a bare-bones assertion of something other than a fleeting relationship does not create an issue of fact as to vicarious liability. There is simply no basis for imputing liability to Riverview for Dr. Rothstein's alleged negligent performance of surgery and his subsequent misleading statements regarding resolution of Tausch's drop-foot condition. Agency should not be presumed. We should be

mindful this was not an emergency room situation. Dr. Rothstein was chosen by Tausch, not supplied by Riverview. There is not even an averment that anything in a surgical-consent form supplied by Riverview created a belief that an agency relationship existed.

{¶ 52} Finally, the trial court properly relied on *Richards* in finding that the cognizable event that started the running of the statute of limitations was the drop-foot condition and paralysis discovered by Tausch shortly after regaining consciousness on August 18, 2005. As the majority acknowledges, there can be no claim of agency by estoppel against Riverview when the statute of limitations has expired against Dr. Rothstein. Thus, Tausch's cause of action against Riverview was untimely and fails as a matter of law.

{¶ 53} Accordingly, I would affirm.