JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants appeal from the trial court's decision entering summary judgment in favor of, defendant-appellee, the Cleveland Clinic Foundation (CCF). The trial court found that, plaintiffs failed to commence this action within the statute of limitations set forth in R.C.2905.11. For the reasons that follow, we reverse and remand for further proceedings.
{¶ 2} In 1986, plaintiff Barbara Ram (plaintiff) felt a lump in her right breast and began treatment with the Cleveland Clinic Foundation (CCF). Two CCF physician employees were treating, plaintiff at that time; a general surgeon and a gynecologist. The CCF surgeon performed a biopsy on, plaintiff's right breast on March 21, 1986. A pathology report was then prepared and sent to CCF.
{¶ 3} The pathology report indicated that, plaintiff had ductal carcinoma in situ. The surgeon discussed treatment options with, plaintiff. Evidence presented indicates that the surgeon did not obtain clear margins, i.e., he did not remove the entire cancer in 1986. Plaintiff did not know this fact. Plaintiff testified that she was told that the cyst was benign and that she only had a precancerous condition. The CCF surgeon informed, plaintiff that her condition could be treated by observation. Plaintiff then consulted with another CCF employee, a gynecologist, who told her that the lump was only a cyst and not to worry. Plaintiff did not believe that she had cancer in 1986.
{¶ 4} In 1994, plaintiff returned to CCF and received hormone replacement therapy. In 1997, plaintiff again discovered a lump in her right breast. She returned to CCF for treatment. At that time, plaintiff was told that she had breast cancer. In February or March 1998, a CCF radiation oncologist informed, plaintiff that she had had cancer in 1986. Plaintiff states that this was the first time she was informed of this fact. After treatment for the reoccurring cancer in 1997, plaintiff had a ninety percent cure rate. There was no indication of metastasis of the cancer at that time.
{¶ 5} On March 9, 1999, an attorney sent notice to CCF that indicated, in pertinent part, the following:
 {¶ 6} Barbara Ram, is contemplating a lawsuit against you in connection with a failure to diagnose cancer in 1986, which failure was not discovered by Mrs. Ram until 1998. The purpose of this notice is to extend by 180 days the time within which suit can be filed.
{¶ 7} In January 2000, plaintiff was diagnosed with metastasis in a supra-clavicular lymph node, meaning that the cancer had spread from her breast. She again returned to CCF for treatment where she received radiation therapy from a CCF radiation oncologist until March or April, 2002. CCF's radiation oncologist testified that by that point, plaintiff's cancer was incurable. In fact, during the pendency of this appeal, plaintiff died.
{¶ 8} Plaintiff commenced this action against CCF on December 7, 2000 for the alleged negligence of its physicians, nurses and other medical care providers in their care and treatment of, plaintiff's intraductal breast carcinoma at a time when, plaintiff's condition was one hundred (100%) treatable and curable. (Complaint ¶ 3-4). Plaintiffs maintain that as a direct and proximate result of CCF's negligence, plaintiff Barbara Ram developed metastatic adenocarcinoma of the breast in February, 2000. Id. at ¶ 5.
{¶ 9} CCF moved for summary judgment on the grounds that the statute of limitations had expired prior to the commencement of this action. The trial court granted CCF's motion. Plaintiffs appeal, assigning the following errors for our review:
 {¶ 10} I. WHETHER THE TRIAL COURT ERRED BY GRANTING, DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
 {¶ 11} II. WHETHER THE TRIAL COURT ERRED IN OVERRULING, PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT.
{¶ 12} Since both assignments of error turn on the same set of facts and law, we address them together. Both of the errors relate to the propriety of the trial court's decision concerning the cross-motions for summary judgment. As such, they require de novo review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585. Summary judgment is appropriate where:
{¶ 13} (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
{¶ 14} Zivich v. Mentor Soccer Club, 82 Ohio St.3d 367, 369-70,1998-Ohio-389. Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); Mootispaw v. Eckstein,76 Ohio St.3d 383, 385, 1996-Ohio-389.
{¶ 15} Plaintiffs urge that the trial court erred in finding that the statute of limitations bars their claims in this medical malpractice action. R.C. 2305.11(B)(1) sets forth the statute of limitations for a medical malpractice claim as follows:
 {¶ 16} an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.
{¶ 17} The Ohio Supreme Court has provided further guidance in determining when a cause of action accrues in a medical malpractice action:
 {¶ 18} a cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later (Oliver v. Kaiser Community Health Found. (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, explained and modified.)
{¶ 19} Frysinger v. Leech (1987), 32 Ohio St.3d 38, paragraph one of the syllabus. Plaintiffs contend that they filed timely under both of the events that can operate to commence the running of the statute of limitations.
{¶ 20} Termination of the Physician-Patient Relationship
{¶ 21} It is undisputed that CCF began treating, plaintiff for a lump in her right breast in 1986. CCF concedes that the metastasis of the cancer is a growth arising from the primary growth.[1] Therefore, it cannot be disputed on these facts that, plaintiff returned to CCF periodically between 1986 and 2000 for further treatments related to the same condition.
{¶ 22} We are not persuaded by CCF's argument that the relationship between, plaintiff and CCF for her condition of cancer terminated at the time that the physicians who treated, plaintiff in 1986 left the employ of CCF. The trial court accepted this argument in reliance upon Clark v. Southview Hosp. Family Health Ctr. (1984),68 Ohio St.3d 435. However, that case is inapplicable to the operative facts here. Clark addressed the ability to hold a hospital liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners. Id. at syllabus. (Emphasis added). It is undisputed that all of the medical practitioners relevant to this case that treated, plaintiff at CCF were employees of CCF.
{¶ 23} It is well settled that a hospital is liable for the negligent acts of its employees under the doctrine of respondeat superior. Berdyck v. Shinde, 66 Ohio St.3d 573, 578, 1993-Ohio-183, citing Klema v. St. Elizabeth's Hosp. of Youngstown (1960),170 Ohio St. 519.
{¶ 24} The trial court believed that the departure of the actual physicians that had treated, plaintiff in 1986 operated to terminate, plaintiff's relationship with CCF since these particular physicians could no longer remedy their alleged negligence. We disagree. The public policy behind tolling the statute of limitations for filing a medical malpractice action until the relationship terminates is to allow the alleged tortfeasor to attempt to alleviate the effects of its negligence. Frysinger, 32 Ohio St.3d at 41; see, also, Ishler v. Miller (1978), 56 Ohio St.2d 447, 449.[2]
{¶ 25} In this case, plaintiff's relationship, in terms of her treatment for her diagnosed breast cancer and the metastasis thereof, was with CCF and was not a separable relationship from the individual medical pratitioner employees of CCF that treated her condition over the years. Accordingly, plaintiff's repeated return visits to CCF, such as in 1997 and 2000, concerning treatment for the reoccurrence and progression of her cancer, both continued the relationship between, plaintiff and CCF and afforded CCF (the alleged tortfeasor) the opportunity to mitigate the effects of its alleged negligence. CCF had the opportunity to cure the alleged mistakes of its former employees and/or provide full treatment to, plaintiff throughout the years, albeit through different physician employees. Whether this was accomplished is a question of fact to be determined by a jury.
{¶ 26} Even construing the evidence in a light most favorable to CCF, reasonable minds could only reach the conclusion that, plaintiff continued to receive treatment for her cancerous condition at CCF at times beginning in 1986 until April 2000. (Tr. 17). To suggest that, plaintiff's radiation therapy at CCF in 2000 was for the treatment of some condition other than the cancer is illogical. Therefore, plaintiffs commenced this action in December 2000 and within the applicable statute of limitations under the termination rule.
{¶ 27} B. Cognizable Event Test
{¶ 28} Since we find that, plaintiffs commenced this action within the statute of limitations under the termination rule, we do not reach, plaintiffs additional contention that the statute of limitations was satisfied under the alternative cognizable event test.
{¶ 29} Based on the foregoing, CCF's motion for summary judgment on the issue of statute of limitations should have been denied and, plaintiffs' corresponding motion should have been granted.
{¶ 30} Assignments of Error I and II are sustained.
Judgment reversed and remanded for further proceedings consistent with this opinion.
It is ordered that appellants recover of appellee their costs herein taxed. The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., CONCURS. ANN DYKE, J., CONCURS IN JUDGMENT ONLY. (SEE SEPARATE CONCURRING OPINION ATTACHED).
[1] While, plaintiffs argue that the metastasis of the cancer is the resulting injury for purposes of the cognizable event test, this is a different issue. In other words, plaintiffs' position is not that the metastasis arises from a different condition, but instead that it manifested a different injury from that condition.
[2] Finding that to require a patient to file suit for malpractice during the course of treatment for a particular injury or disease when he believes or reasonably should believe that he has a malpractice claim would destroy this mutual confidence in the physician-patient relationship. Such a requirement would place the patient in the unacceptable situation of deciding whether to continue the ongoing treatment and thus risk the chance of forfeiting his right to bring suit at a later date, or terminate the relationship, and, perhaps, deny the physician the opportunity of correcting his error.