NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0593n.06

No. 11-4085

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 08, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| LARS ST. JOHN, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| BOSLEY, INC.; MEDICAL HAIR | ) THE NORTHERN DISTRICT OF |
| RESTORATION, aka MHR; GABRIEL | ) OHIO |
| KRENITSKY; RANDALL MILLER; | ) |
| MAUREEN LENON; LINDA COYNE; | ) |
| JAMES DOUCETTE; MATT L. LEAVITT, | ) |
| | ) |
| Defendants-Appellees. | ) |

BEFORE: MARTIN and CLAY, Circuit Judges; HOOD, District Judge.[*]

PER CURIAM. Lars St. John, a *pro se* Ohio resident, appeals a district court's judgment dismissing his civil rights complaint filed pursuant 42 U.S.C. §§ 1981 and 2000e (Title VII). He also alleged supplemental state law claims under Ohio law.

On April 28, 2010, St. John sued Medical Hair Restoration (MHR); MHR Chief Executive Officer Randall Miller; MHR employees Michael Leavitt, Maureen Lenon, Linda Coyne, James Doucette; and two doctors, Gabriel Krenitsky and Matt Leavitt. St. John alleged that the defendants subjected him to racial discrimination, sexual harassment, and gender discrimination. He also alleged that the defendants violated Ohio law by subjecting him to bodily injury and breaching his contract with MHR for hair grafts. The district court *sua sponte* dismissed St. John's sexual harassment and gender discrimination claims because St. John was not an MHR employee. The court also dismissed Michael Leavitt as a party because he was only named in the sexual harassment

_____

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

claim. Subsequently, St. John added Bosley, Inc., (which had merged with MHR) as a defendant. The parties consented to have the case decided by a magistrate judge. The defendants subsequently moved for summary judgment and St. John filed a response.

The district court granted the defendants' motion for summary judgment, concluding that (1) St. John's claim for "bodily injuries" was barred by Ohio's one-year statute of limitations governing medical malpractice claims; (2) the defendants did not breach their contract with St. John; and (3) St. John did not establish a violation of section 1981.

On appeal, St. John argues that the district court erred by (1) giving legal advice to the defendants concerning the statute of limitations defense; (2) relying on statements that St. John denied making; (3) construing St. John's bodily injury claim as a medical malpractice claim; (4) disregarding St. John's statement that the movements he observed Dr. Krenitsky make during surgery were not consistent with making pin-size holes for hair grafts; (5) disregarding photographs that he submitted which allegedly showed that there had been no change in the density of his hair; (6) concluding that St. John's longest surgical procedure lasted no more than two-and-a-half hours; (7) overlooking Louisiana law on tort liability; and (8) overlooking the absence of affidavits from defendants Doucette and Lenon.

Because St. John presents does not challenge the dismissal of his sexual harassment and gender discrimination claims, or the dismissal of Michael Leavitt, these issues are deemed abandoned and not reviewable on appeal. *See Post v. Bradshaw*, 621 F.3d 406, 413–14 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 2902 (2011).

We review a grant of summary judgment *de novo*. *Dixon v. Gonzales*, 481 F.3d 324, 330 (6th Cir. 2007). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

St. John's bodily injury claim is barred by Ohio's one-year statute of limitations for medical malpractice claims. St. John argues that his claim is covered by the two-year statute of limitations for bodily injuries set forth in Ohio Revised Code § 2305.10(A). Pursuant to section 2305.113(E)(3),

a "medical claim" is any claim that is asserted in any civil action against a physician that arises out of the medical diagnosis, care, or treatment of any person. Moreover, section 2305.113(A) provides for a one-year statute of limitations for such claims. The two-year statute of limitations cited by St. John applies to claims of bodily injury that arise as a result of negligence committed by any health care provider *not* listed in section 2305.11. *See Investors REIT One v. Jacobs*, 546 N.E.2d 206, 210 (Ohio 1989). Because doctors are expressly covered under section 2305.113(E)(3), the one-year statute of limitations contained in section 2305.113(A) applies.

"[M]edical malpractice accrues and the statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, *whichever occurs later*." *Frysinger v. Leech*, 512 N.E.2d 337, 341 (Ohio 1987) (emphasis in original). The record reflects that St. John had concerns with the treatment provided during his first procedure by April 7, 2008, the date on which a medical assistant allegedly informed him that the doctor left an un-sutured hole in his head. St. John had concerns with the treatment provided during his second procedure by April 21, 2009, the date on which he wrote a letter to Miller complaining about the results of the procedure. Furthermore, no MHR or Bosley employee had any contact with St. John after April 23, 2009. Therefore, his cause of action accrued no later than April 23, 2009. *Id*. However, St. John did not file his complaint until April 28, 2010, beyond the applicable one-year statute of limitations.

St. John also failed to establish a breach of contract claim. Under Ohio law, a breach of contract claim "requires proof of the existence of a contract, performance by the plaintiff, breach by the defendant, and damages." *Lucio v. Safe Auto Ins. Co.*, 919 N.E.2d 260, 267 (Ohio Ct. App. 2009). St. John contracted to receive approximately 250 hair grafts during the March 28, 2008, procedure, and St. John received the number of grafts for which he contracted. Further, on March 30, 2009, St. John received approximately 117 additional grafts. Dr. Krenitsky submitted the operative reports for each surgical procedure, which also indicated that St. John received 250 grafts on March 28, 2008, and 117 grafts on March 30, 2009. St. John argues that the operative reports

were not signed or dated, and that the "section for grafts" was not completed in the operative report for the March 28, 2008. However, each report contains the date of the procedure and the number of grafts provided. Dr. Krenitsky's affidavit and the operative reports establish an absence of evidence to support St. John's breach of contract claim.

The defendants did not discriminate against St. John in violation of section 1981. Because St. John presented no direct evidence of race discrimination, the district court properly analyzed his claim under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The standards for discrimination under Title VII are equally applicable to claims under section 1981. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020 n.2 (6th Cir. 2000). To demonstrate a *prima facie* case under that framework, St. John must show that: (1) he belongs to a protected class; (2) he "sought to make a contract for services ordinarily provided by the defendant"; and (3) he was "denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not" or he was "treated in such a hostile manner that a reasonable person would find it objectively discriminatory." *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 639 (6th Cir. 2009).

The parties do not dispute that St. John meets the first two prongs of the test because he is African-American and he entered into contracts with MHR for the treatment of his hair loss. However, St. John failed to establish that he was denied services provided to patients outside of his protected class. The office manager, Linda Coyne, averred that she made several attempts to contact St. John to remind him of upcoming appointments or to check on him following the surgical procedures. However, St. John did not have an answering machine connected with the home telephone number he provided, which prevented her from leaving messages for him. St. John has provided no evidence to rebut Coyne's averment.

St. John also did not establish that he was denied post-operative meals based on his race. Krenitsky averred that patients were sometimes provided with meals following procedures that lasted longer than four hours. During his deposition, St. John testified that his procedures lasted no longer than two-and-a-half hours. Although St. John now argues that his procedures lasted longer, this

statement contradicts his prior sworn testimony. St. John is prohibited from creating a genuine issue of material fact by contradicting his prior testimony. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

St. John failed to present evidence that he was provided services in a hostile manner. St. John maintains that Coyne made him wait thirty minutes for an appointment, but immediately advised the doctor of waiting patients after a white patient appeared at the office. In addition, he alleged that the doctor insisted on first seeing his scheduled patient, even though St. John needed only three minutes to present his concerns. However, Coyne averred that she did not interact inappropriately with St. John, and that her conduct toward him was not based on his race. Moreover, the doctor's insistence on seeing a patient who had a scheduled appointment, prior to visiting with St. John about his concerns, does not establish that he was treating St. John differently based on his race.

St. John's remaining arguments are without merit. A review of the district court's record shows that the court did not improperly give legal advice to the defendants. The district court did not err when it disregarded St. John's statement that he later recalled observing the doctor's movements during his surgery. The statement contradicts St. John's deposition testimony, wherein he acknowledged that he did not see what the doctor was doing during surgery. Finally, Louisiana case law is inapplicable to St. John's federal and Ohio claims.

The district court's judgment is affirmed.