[Cite as *Morgan v. Ohio State Univ. College of Dentistry*, 2013-Ohio-1513.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

GREGORY B. MORGAN

    Plaintiff

    v.

THE OHIO STATE UNIVERSITY COLLEGE OF DENTISTRY

    Defendant

Case No. 2010-05111

Judge Dale A. Crawford

<u>DECISION</u>

{¶ 1} Plaintiff brought this pro se action alleging negligence against Defendant, the Ohio State University College of Dentistry (OSU), as a result of dental treatment he received from March 24, 2006 to March 15, 2010. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability. The following constitutes the Court's Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

{¶ 2} On March 24, 2006, Plaintiff presented at OSU's emergency student clinic complaining of pain in tooth number 2. During the course of treatment on tooth number 2, OSU determined that Plaintiff had other immediate needs due to significant decay on tooth numbers 15, 19, and 30, in addition to tooth number 2.

{¶ 3} In the summer of 2006, large fillings were placed on tooth numbers 2, 15, 19, and 30, which are posterior teeth. Because of the size of the fillings, it was

determined that the four teeth would require crowns.[1]  Joseph Landry, II, at the time a third-year dental student, placed the crowns on tooth numbers 2, 15, 19, and 30, at OSU's pre-doctoral clinic in 2007.  In August and September 2007, provisional crowns were placed on the four posterior teeth and the first permanent crown was placed by Landry on October 8, 2007.

{¶ 4} During his course of treatment in 2006, Plaintiff advised OSU of aesthetic work he wanted to have done on his teeth to restore wearing that had occurred on his teeth.  Plaintiff was referred to Dr. Julie Holloway in Defendant's graduate prosthodontic clinic for evaluation.  At all relevant times, Dr. Holloway was the Associate Director of Graduate Programs at OSU.

{¶ 5} On January 29, 2007, Plaintiff met with Dr. Holloway for the first time at a screening appointment and she looked into Plaintiff's mouth for a preliminary evaluation. At this evaluation, she offered Plaintiff two treatment options.  (Defendant's Exhibit A, pg. 13.)   Dr. Holloway explained that the first option, called a "full mouth rehab," involved crowning all of Plaintiff's teeth and opening his vertical dimension and occlusion.   The second option included using orthodontics and then crowning 16 of Plaintiff's teeth, four of the crowns (tooth numbers 2, 15, 19, and 30) would be done in OSU's pre-doctoral clinic.   Dr. Holloway verbally informed Plaintiff of the advantages and disadvantages of each option at this meeting.   Dr. Holloway calculated that treatment option 1 would cost approximately $23,000 and treatment option 2 would cost approximately $16,000.  (Defendant's Exhibit A, pg. 91.)  A third option, as identified by the court and testified to by Dr. Holloway, was to do nothing, other than tooth numbers 2, 15, 19, and 30.  Dr. Holloway noted in Plaintiff's chart from the January 29, 2007 evaluation that Plaintiff was to call if he wished to pursue a treatment option.

---

[1] On December 5, 2006, Dr. Grace Chung-Evans, a resident in OSU's graduate endodontics clinic, performed a root canal on tooth number 2 and a temporary filling was placed on the tooth; the permanent filling was placed in June 2007.

{¶ 6} Dr. Holloway advised Plaintiff that before any final evaluation and treatment plan could begin, one half of the cost had to be deposited.  However, the court finds that Plaintiff never made a decision about which treatment plan to pursue, and thus no final evaluation or overall treatment ever began.  While Plaintiff had many discussions with various individuals at OSU regarding the treatment options, at no time did Plaintiff advise Defendant that he was ready, willing, and able to proceed with treatment option 1 or 2.  Instead, Plaintiff proceeded with what the court has identified as option 3, which only involved filling and crowning tooth numbers 2, 15, 19, and 30.

{¶ 7} On June 24, 2008, Plaintiff called a receptionist at OSU requesting a meeting with Dr. Matthew Ames, the orthodontic resident, Dr. Mohamed Abdelhamed, the prosthodontic resident, and Dr. Holloway.  Plaintiff met with Drs. Ames and Abdelhamed on July 25, 2008 and Plaintiff testified that Dr. Holloway was listening outside of the cubicle where Drs. Ames and Abdelhamed met with him.  Dr. Abdelhamed noted on Plaintiff's chart that he and Dr. Ames "systematically" answered Plaintiff's questions about the two treatment plans.  (Defendant's Exhibit A, pg. 37.)

{¶ 8} Plaintiff met with Dr. Holloway on September 19, 2008, to discuss the two

{¶ 9} treatment options.  Dr. Holloway noted on Plaintiff's chart, "During this time, I listened patiently and explained things regarding his [treatment] options and the mechanics of ortho and/or full mouth rehabilitation."  (Defendant's Exhibit A, pg. 38.)  At this meeting, Dr. Holloway informed Plaintiff that he was not an appropriate case for the advanced prosthodontic clinic.

{¶ 10} As a result of the meetings with Drs. Holloway, Abdelhamed and Ames, Plaintiff did not choose either treatment option 1 or 2.  Furthermore, in his trial deposition testimony, Dr. Abdelhamed testified that treatment options 1 and 2 were only *options* and no firm treatment plan was in place.

{¶ 11} While Plaintiff claims that he was committed to treatment option 2 by the time  the first permanent crown was placed on one of his four posterior teeth, the

evidence does not support such an assertion. As testified to by Dr. Holloway, Plaintiff was required to deposit one half of the cost of the treatment before it began, and to this day, Plaintiff has not deposited this money with defendant. Further, the four posterior teeth (numbers 2, 15, 19, 30) had to be crowned because of their extensive decay no matter which treatment option Plaintiff chose. The court finds, as was testified to by Dr. Abdelhamed, the placement of the four crowns on Plaintiff's posterior teeth had nothing to do with treatment option 2.

{¶ 12} Upon consideration of the evidence, the Court finds that Plaintiff chose to proceed with treatment option 3 which involved doing nothing.

**CONCLUSIONS OF LAW**

1. Limitation of Action

{¶ 13} Defendant, in its Motion for Summary Judgment, raised the issue of the one year statute of limitation, set forth in R.C. 2305.113(A), seeking to bar any claims for negligence taking place after September 2008. Prior to the trial, the Court denied the motion but held that there was an issue of material fact which would be determined at trial.

{¶ 14} "[A] cause of action for medical malpractice accrues and the statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, *or* (b) when the physician-patient relationship for that condition terminates, *whichever occurs later.*" (Emphasis sic.) *Frysinger v. Leech*, 32 Ohio St.3d 38, 41-42 (1987).

{¶ 15} Plaintiff received a letter from Dr. Holloway dated September 19, 2008, which states: "Per our conversation today, September 19, 2008, this letter is to confirm that I do not feel your treatment is appropriate for our graduate clinics and refer you to the dentist or prosthodontist of your choice for treatment of your anterior tooth wear. * * * You may seek routine treatment in our undergraduate clinic for simple decay issues

and cleanings as you have in the past.  You are presently free of dental decay, but the Advance Prosthodontics Graduate Clinic will provide emergency fee-for-service care to you for a period of 30 days from the date of this letter." (Defendant's Exhibit A, pg. 62.)

{¶ 16} On September 24, 2008, Dr. Matthew Ames wrote the following letter to Plaintiff: "As you know, your orthodontic treatment plan in our clinic is adjunctive to your prosthodontic treatment plan in the OSU Graduate Prosthodontic Clinic.  Since your case for various reasons has been deemed inappropriate as an educational experience for our residents, we will be inactivating your records in our Orthodontic Clinic and have cancelled your 9/30/08 appointment in our clinic."  (Defendant's Exhibit A, pg. 153.) Plaintiff testified that after September 2008, he continued to receive care and treatment from Defendant at its undergraduate student clinic.  Plaintiff's final appointment at Defendant's student clinic occurred on March 15, 2010.  Plaintiff filed his complaint on March 22, 2010.

{¶ 17} Plaintiff alleges that the dentist-patient relationship ended on March 15, 2010, when he terminated his relationship with OSU.  OSU alleges that the relationship, regarding the negligence claim of going forward without a comprehensive plan in place, terminated when the September 2008 letters from Drs. Holloway and Ames were received by Plaintiff.

{¶ 18} While the Supreme Court of Ohio has not decided the issue of when the statute of limitations runs when a patient's treatment is terminated from one hospital facility and related treatment commences at another hospital facility, the Tenth District and Eighth District Courts of Appeals have decided the issue.

{¶ 19} In *Ram v. Cleveland Clinic Found.,* 8th Dist. No. 80447, 2002-Ohio-3644, the court held that there was an ongoing non-separable relationship over many years with a breast cancer patient who was surgically treated and later treated by an oncologist, all at the Cleveland Clinic.  While the alleged negligent surgical treatment terminated in 1986, plaintiff returned for hormone replacement therapy where upon a

lump on her breast was found in 1997. From 1997 to 2002, she received treatment at the Cleveland Clinic for her cancer from an oncologist. The malpractice claim for the 1986 actions of the surgeon was filed in 2002. The court held that the physician-patient relationship did not terminate until 2002 and the statute of limitations did not bar recovery. The court stated:

**{¶ 20}** "In this case, plaintiff's relationship, in terms of her treatment for her diagnosed breast cancer and the metastasis thereof, was with CCF and was not a separable relationship from the individual medical practitioner employees of CCF that treated her condition over the years. Accordingly, plaintiff's repeated return visits to CCF, such as in 1997 and 2000, concerning treatment for the reoccurrence and progression of her cancer, both continued the relationship between plaintiff and CCF and afforded CCF (the alleged tortfeasor) the opportunity to mitigate the effects of its alleged negligence." *Id.* at ¶ 24.

**{¶ 21}** In *Theobald v. Univ. of Cincinnati*, 10th Dist. No. 09AP-269, 2009-Ohio-5204, plaintiff was seriously injured in a motor vehicle accident and was surgically treated at University Hospital in 1998. Plaintiff was subsequently released from the surgical unit of the hospital to commence rehabilitation in the hospital rehabilitation unit. The rehabilitation unit was part of the hospital complex but was in a separate building. Plaintiff continued with his rehabilitation until the suit was filed alleging malpractice in the 1998 treatment. The *Theobald* court distinguished *Ram* as follows:

**{¶ 22}** "However, *Ram* is distinguishable from this case because in *Ram*, the patient was continuing to treat for the exact condition for which she had initially sought treatment, and upon which her medical claims were based. In this case, the evidence shows that Theobald's transfer to Drake was for the purpose of receiving rehabilitation services, and not for the purpose for which care had been sought from University Hospital. Moreover, in *Ram*, the patient continued to treat at the same location. In this

case, Theobald was transferred to a completely different hospital that apparently was only coincidentally affiliated with UC." *Id.* at ¶ 16.

{¶ 23} The case at bar is akin to *Ram.* Plaintiff went to OSU to get dental treatment. While in the dental clinic, he was evaluated to determine the extent of the treatment needed to resolve his overall dental issues. The dentists' continued treatment of Plaintiff in the same building was based upon the initial analysis and such treatment did not cease until March 15, 2010. The fact that two dentists advised Plaintiff that they would not treat him for prosthodontic or orthodontic care does not amount to "a separable relationship from the individual medical practitioner * * * that treated [his] condition." *Ram, supra,* at ¶ 24. The court finds that the one year statute of limitations set forth in R.C. 2305.113(A) had not expired when this case was filed in 2010.[2]

## 2. Dr. Holloway's Immunity

{¶ 24} During the course of the trial, Plaintiff advised the court that he did not believe Dr. Julie Holloway was entitled to immunity pursuant to R.C. 2943.02(F) and 9.86. While this issue was not properly raised prior to trial, the court will dispose of it.

{¶ 25} R.C. 2743.02(F) states, in part:

{¶ 26} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the

---

[1] During the trial, Defendant moved for a directed verdict pursuant to Civ.R. 50 on the issue of the statute of limitations. The Court took the motion under advisement and the motion is hereby DENIED.

officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶ 27} R.C. 9.86 states, in part:

{¶ 28} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 29} Dr. Holloway was an employee of Defendant at the time of his treatment. The question whether the employee acted outside the scope of her employment, or with malicious purpose, in bad faith, or in a wanton or reckless manner is one of fact. *Tschantz v. Ferguson*, 49 Ohio App.3d 9 (10th Dist.1989). "Malicious purpose encompasses exercising 'malice,' which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another. Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interest or sinister motive. Finally, reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent." (Citations omitted.) *Caruso v. State*, 136 Ohio App.3d 616, 620-621 (10th Dist.2000).

{¶ 30} In open court, the Court found that there was no evidence to support a finding that Dr. Holloway is not entitled to civil immunity. Plaintiff failed to present any evidence that Dr. Holloway's conduct was reckless. Dr. Holloway presented Plaintiff with two treatment options and for several months Plaintiff did not decide on an option. Dr. Holloway met with Plaintiff in September 2008 and she noted that she spent more

time than was scheduled to meet with him and discuss his questions. (Defendant's Exhibit A, pg. 38.) Therefore, the Court finds that Dr. Holloway is entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against her based upon the allegations in this case.

3. Malpractice Standards-Negligence and Proximate Cause

{¶ 31} "[I]n order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a [dentist,] physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things." *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 131 (1976).

{¶ 32} To prove his dental claim, Plaintiff in this case is required to have expert dental testimony that the alleged treatment of the dentists fell below the applicable standard of care and that the failure to maintain the standard of care proximately caused some injury to plaintiff. *Campbell v. Ohio State Univ. Med. Ctr.,* 10th Dist. No. 04AP-96, 2004-Ohio-6072.

{¶ 33} Dr. David Cagna was Plaintiff's only expert and he gave only one opinion that was properly adduced and properly rendered.

{¶ 34} "Q: With a reasonable degree of medical certainty, in your opinion, did the Ohio State College of Dentistry breach the standard of care by placing four crowns on my posterior teeth before performing a comprehensive occlusal analysis in formulating my treatment plan, including taking two sets of diagnostic casts mounted anatomically in

an articulator, one left as is and one with wax added to it to simulate the loss of tooth structure in order to compare abnormal to normal?

{¶ 35} "A: Yes."

{¶ 36} All other opinions given by Dr. Cagna were not given to a reasonable degree of dental certainty. For example Dr. Cagna was asked:

{¶ 37} "Q: Could you please give your expert opinion on the validity and appropriateness of methods used by the Ohio State College of Dentistry to develop a treatment plan as part of my therapy?

{¶ 38} "A: In my review of the records, I found very inadequate indication that thorough examination of you was accomplished and the necessary clinical interventions accomplished in order to arrive at a treatment plan."

{¶ 39} In addition, at no time was Dr. Cagna asked to opine within a reasonable degree of dental certainty whether the negligence of Defendant was a proximate cause of any injury to Plaintiff.

{¶ 40} Plaintiff is a non-lawyer pro se plaintiff with somewhat limited knowledge of the law and the Ohio Rules of Evidence. However, this does not exempt him from the requirement that he must prove malpractice and proximate cause by expert testimony properly elicited. Even with Plaintiff's failure to produce proper opinion evidence on negligence and proximate cause, the Court has reviewed all of the testimony and has concluded that there is insufficient evidence to establish that Defendant was negligent in any part or in the overall treatment of Plaintiff and there is no evidence that Plaintiff has been damaged in any way by Defendant's treatment.

{¶ 41} Dr. Cagna properly opined that Defendant fell below the standard of care in not formulating a comprehensive treatment plan before it proceeded with the treatment on tooth numbers 2, 15, 19, and 30. The Court has previously found that Defendant had no option but to go forward with the treatment of tooth numbers 2, 15, 19, and 30 before a comprehensive treatment plan was in place. Plaintiff's four teeth

were in need of immediate repair and treatment could not wait until Plaintiff chose a treatment option and/or was able to pay $23,000 for option 1 or $16,000 for option 2. The Court finds that neither Defendant nor its employees fell below the standard of care in its treatment of Plaintiff from March 24, 2006 to March 15, 2010.

4. Informed Consent

{¶ 42} The Supreme Court of Ohio has held that "[t]he tort of lack of informed consent is established when:

{¶ 43} "(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;

{¶ 44} "(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and

{¶ 45} "(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy. * * * [T]he reasonable patient standard is utilized." *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 139 (1985); *see also White v. Leimbach*, 131 Ohio St. 3d 21, 2011-Ohio-6238, ¶ 26-30.

{¶ 46} Plaintiff received the general treatment options for the comprehensive plan and was told to choose an option. Dr. Holloway informed Plaintiff of the advantages and disadvantages of each option at their January 29, 2007 meeting. As testified to by Dr. Holloway, if Plaintiff chose either treatment option 1 or 2, a formal prosthodontic treatment plan would be signed by the faculty member, the resident, and the patient. No such plan was ever selected or signed by Plaintiff.

{¶ 47} It is clear from the evidence that there was proper informed consent for the work that was actually performed on Plaintiff's teeth. (Defendant's Exhibit A, pgs. 68,

76.)  Dr. Cagna testified that the standard of care was breached by Defendant failing to obtain Plaintiff's informed consent for the comprehensive treatment plan that was to be performed on his mouth.3

{¶ 48} It is unclear what Dr. Cagna meant by this opinion.  Dr. Cagna believes that Defendant should have had a treatment plan in place before it performed work on tooth numbers 2, 15, 19, and 30.  However, since Plaintiff failed to select and pay for treatment option 1 or 2, it was impossible for Defendant to have a treatment plan in place before performing the needed work on tooth numbers 2, 15, 19, and 30.  Thus, informed consent on a treatment plan was impossible and/or premature.  Thus, Defendant had no duty to disclose to Plaintiff any material risks.

{¶ 49} Assuming there was a failure to disclose the material risks, there was no testimony regarding what unrevealed risks and dangers actually materialized.  There was testimony that if Plaintiff ultimately selects treatment option 1 or 2 in the future, there would have to be some changes made with respect to the work already performed.  The Court finds that having to make necessary changes was not a material risk that needed to be disclosed.  It was an event caused by Plaintiff's failure to select a treatment option not because of the work performed by Defendant.  Finally, the Court finds that Plaintiff failed to prove that he would have decided against going forward with the work on tooth numbers 2, 15, 19, and 30 if he had been informed that there would have to be necessary changes in the work performed if he later chooses treatment option 1 or 2.  Plaintiff clearly has the ability at this time to go forward with whatever subsequent treatment he would choose.  Plaintiff has failed to prove a lack of informed consent and that any lack of informed consent proximately caused injury to him.

---

[3] This testimony was given based on a previous question from the Court.  Dr. Cagna answered: "the patient did agree to and was provided informed consent for individual teeth in his mouth that probably

**CONCLUSION**

{¶ 50} Plaintiff filed a 37-page complaint.  It included six causes of action and several of the causes of action contained multiple counts.  During the course of the trial and closing argument, Plaintiff was asked on which claims he was proceeding.  Plaintiff advised the Court that he was only advancing his cause of action for dental malpractice for OSU's failure to have a treatment plan in place to improve the aesthetics of his teeth.  Plaintiff stated in his closing argument, and his expert witness testified, that there was no malpractice by Defendant for work that was performed on tooth numbers 2, 15, 19, and 30.  Plaintiff withdrew his causes of actions for dental malpractice, malpractice based on loss of chance, breach of duty of attention and care, and lack of informed consent based upon the root canal performed on tooth number 2 and the timeliness of placing a crown on tooth number 15.  Even upon review of the evidence, Plaintiff failed to prove such claims inasmuch as he did not present expert testimony of a breach of the standard of care.  Furthermore, even though Plaintiff's causes of action for breach of warranty and aiding and abetting have been withdrawn, the Court finds that there is no evidence to support such claims.

{¶ 51} The Court finds that Plaintiff has failed to prove by a preponderance of the evidence that Defendant was negligent in its treatment of Plaintiff from March 24, 2006 to March 15, 2010, and has failed to prove by a preponderance of the evidence that if there was negligence on behalf of Defendant such negligence was a proximate cause of any injury to Plaintiff.

{¶ 52} Judgment shall be rendered in favor of Defendant.

_____
DALE A. CRAWFORD
Judge

---

required restoration, but in carrying out that spot treatment * * * the standard of care was breached in terms of informed consent for his entire mouth."



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

GREGORY B. MORGAN

    Plaintiff

    v.

THE OHIO STATE UNIVERSITY COLLEGE OF DENTISTRY

    Defendant

Case No. 2010-05111

Judge Dale A. Crawford

JUDGMENT ENTRY

{¶ 53} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Furthermore, the court finds that Dr. Julie Holloway is entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against her based upon the facts of this case. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
DALE A. CRAWFORD
Judge

cc:

Daniel R. Forsythe                    Gregory B. Morgan
Jeanna R. Volp                        5994 Clearport Road SW
Assistant Attorneys General           Lancaster, Ohio 43130
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

007
Filed January 18, 2013
To S.C. Reporter April 16, 2013